## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

v.

Eric Michelle Hunter,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 12-185(3) ADM/FLN
Civil No. 16-1422 ADM

_____

Thomas M. Hollenhorst, Esq., Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Eric Michelle Hunter, pro se.

_____

## I.  INTRODUCTION

On May 20, 2016, Defendant Eric Michelle Hunter ("Hunter") filed a Motion to Vacate under 28 U.S.C. § 2255 [Criminal Docket No. 348].[1]  For the reasons set forth below, Hunter's motion is denied.

## II.  BACKGROUND

### A.  Pretrial

On July 16, 2012, Hunter, Rikki Lee Gilow ("Gilow"), and Jerry Anthony Harvey ("Harvey") were charged in a 20-count Indictment [Docket No. 1] for narcotics and firearms offenses.  Hunter, represented by counsel, filed nine evidentiary and discovery motions.  See [Docket Nos. 42–50].[2]  Gilow and Harvey also filed pretrial motions.  On October 9, 2012,

_____

[1] All docket citations are to the Criminal Docket.

[2] Hunter's Motion to Suppress Government Interception of Wire or Oral Communication [Docket No. 50] was withdrawn at the September 5, 2012 motions hearing.  See Min. Entry [Docket No. 62].

Gilow pled guilty to Count 1, conspiracy to distribute controlled substances.  <u>See</u> Min. Entry [Docket No. 84].

Hunter's trial was set for December 17, 2012.  On October 17, 2012, Hunter requested new counsel.  <u>See</u> Min. Entry [Docket No. 86].  Attorney Thomas C. Plunkett ("Plunkett") was appointed to represent Hunter.  <u>See</u> Order [Docket No. 88].  However, on November 20, 2012, Hunter advised the Court that he would rather represent himself and have Plunkett appointed as standby counsel.  <u>See</u> Min. Entry [Docket No. 104].  On November 26, 2012, after a <u>Faretta</u> hearing was held to determine whether Hunter fully and completely understood his rights to proceed pro se, Hunter was granted leave to represent himself and Plunkett was appointed standby counsel.  <u>See</u> Order [Docket No. 95].  As standby counsel, Plunkett was to be ready to assist Hunter in the preparation of his defense.  <u>Id.</u>

Hunter then filed additional pretrial motions with Plunkett's assistance.  <u>See</u> [Docket Nos. 96–102, 105, 109–121, 123].  On December 10, 2012, Hunter was charged in a 22 count Superseding Indictment [Docket No. 107].  The narcotics and firearm offenses charged in the Superseding Indictment included the charges in the original Indictment, but the narcotics offenses were supplemented to include the description and the amount of drugs alleged and one firearm count was amended to allege that the firearm was a machine gun.  The Superseding Indictment charged Hunter with one additional narcotics offense as well as a new count alleging witness tampering.

On December 20, 2012, Hunter, Plunkett, and the Government appeared for a second motions hearing before Magistrate Judge Franklin L. Noel.  <u>See</u> Min. Entry [Docket No. 132].  Hunter, with Plunkett's assistance, filed a memorandum in support of his pretrial motions.  <u>See</u>

Mem. [Docket No. 136]. Hunter and Plunkett later, after Judge Noel had ruled on many of the earlier motions, filed additional pretrial motions. See Order [Docket No. 140]; [Docket Nos. 154–56, 158]. After Judge Noel issued a Report and Recommendation [Docket No. 162] on 12 earlier motions, Hunter and Plunkett filed Objections [Docket No. 172] to the Report and Recommendation. Hunter and Plunkett continued to file pretial motions leading up to trial. See [Docket Nos. 166–67, 173, 190, 192].

On February 12, 2013, the Government moved to dismiss Counts 3 through 12 of the Superseding Indictment [Docket No. 183]. The remaining charges against Hunter were one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; four counts of aiding and abetting the distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2; two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); one count of aiding and abetting using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(i); one count of aiding and abetting using and carrying a machine gun during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(C)(ii); two counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

The first day of trial was February 19, 2013. Prior to voir dire, the Court inquired of Hunter if he still desired to represent himself. Tr. [Docket No. 286] at 3:23–4:8.[3] Hunter

---

[3] The trial transcripts are spread across four docket entries, numbers 286–289. Because the pagination between docket entries is sequential, for clarity, citations to the transcript will refer to the page and line number and will not distinguish between docket entries.

responded he now wanted Plunkett to represent him during the trial.  Id. 4:9–10.  The Court

asked Plunkett if he was prepared and ready to proceed, to which he replied that he was.  Id.

5:12–17.  Jury selection then proceeded.

**B.  Trial Testimony**

Between September 2011 and May 2012, undercover agents completed several controlled

buys of controlled substances and firearms.  Evidence introduced at trial included text messages,

audio and video recordings, and the testimony of the undercover agents who communicated with

and made the controlled buys from Hunter and his co-defendants.

The first controlled buy occurred on September 14, 2011.  Using a confidential

informant, officers arranged for the purchase of 50 ecstacy tablets.  Id. 61:7–10.  Officers

observed the confidential informant first speak with a male individual before purchasing the

ecstacy through the back window of a vehicle driven by a woman.  Id. 64:14–65:16.  The driver

of the vehicle was later identified as Gilow; the male individual was later identified as Hunter.

Id. 65:19–66:17.  Officer Steven Stoler ("Stoler"), posing as a drug dealer, made additional

controlled substance purchases from Gilow over the following months.

Eventually, Officer Stoler facilitated introducing Gilow to Agent Robert Almgren

("Almgren") from the Bureau of Alcohol, Tobacco, and Firearms.  Id. 133:12–15.  Agent

Almgren was posing as a member of a motorcycle gang from Wisconsin who was interested in

purchasing drugs and guns.  Id. 236:16–18.  On April 17, 2012, Agent Almgren negotiated for

the purchase of 25 grams of heroin.  Id. 245:23–246:3.  Officer Stoler later met Gilow and

exchanged $2,500 for the heroin.  Id. 139:17–2.  Gilow asked Officer Stoler what else he was

interested in purchasing.  Id. 141:19–20.  Officer Stoler responded by making a hand motion of a

gun. Id.

Around this time Agent Almgren started communicating directly with Hunter. Id.
247:8–17. During their discussions of purchasing narcotics and firearms, Hunter stated he had a
new firearm for sale. Id. 249:7–15. On April 20, 2012, Agent Almgren and Officer Stoler met
with Gilow and Harvey. Id. 143:23–144:10. After speaking with Hunter on the telephone,
Agent Almgren and Officer Stoler purchased three ounces of heroin from Harvey and Gilow for
$7,500. Id. 146:12–148:10. Officer Stoler said he had additional money to purchase a firearm,
but Harvey said he did not have the firearm with him. Id. 147:18–22.

On May 2, 2012, Agent Almgren and Hunter met in a restaurant. Id. 283:21–284:3. The
jury listened to an audio clip of Agent Almgren and Hunter's conversation inside the restaurant.
In the taped conversation, Hunter tells Agent Almgren that he has "everything in the city."
"Guns, everything. Ice, everything." Id. 292:17–293:1. Later that same night, Agent Almgren
met Hunter and Gilow and purchased a firearm and approximately three ounces of heroin for
$7,800. Id. 309:19–312:18.

On May 16, 2012, Officer Stoler spoke with Gilow on the phone. Id. 167:6–8. Gilow
stated that "my guy wants to talk to you." Id. 168:7–9. Hunter then got on the phone. Id.
168:11–12. The two discussed firearms, and their conversation ended with Hunter telling
Officer Stoler to arrange for Agent Almgren to pick up a firearm. Id. 169:9–16. Gilow resumed
speaking, and the two discussed a sale of narcotics, which occurred later that day. Id. 174:3–11.

On May 17, 2012, Officer Stoler received a picture of a firearm and a message on his
phone. Id. 196:12–197:5. The message read, "Hey send this to dude, get at me asap so we know
if he gone be down here and we can get together." Id. 201:9–10. In a later phone conversation,

Hunter asked Agent Almgren if he liked the picture of the firearm.  <u>Id.</u> 331:6–18.  Agent

Almgren replied yes and asked Hunter if it goes "bang, or does it go rat-a-tat-tat-tat-tat-tat?"  <u>Id.</u>

332:16–17.

On May 22, 2012, Officer Stoler and Hunter discussed purchasing heroin and a firearm.

<u>Id.</u> 202:23–24.  Hunter agreed to sell Officer Stoler one ounce of heroin and the firearm shown in

the May 17 cell phone picture for $3,800.  <u>Id.</u> 210:2–211:8.  The transaction was completed later

that same day.  <u>Id.</u> 213:13–215:12.

On July 24, 2012, Hunter, Gilow, and Harvey were arrested.  Police searched Hunter and

Gilow's apartment and seized, among other things, 167 grams of heroin.

## C.  Post-Trial

On February 22, 2013, after a four day trial, the jury found Hunter guilty of all counts in

the Superseding Indictment.  The Presentence Investigation Report ("PSR") determined that

because Hunter was a career offender, his base offense level was 37, his criminal history

category was VI, and his sentencing guideline range was life imprisonment.  PSR ¶ 65.  Hunter,

through attorney Plunkett, challenged the applicability of the career offender designation,

arguing that his adjusted offense level was 30 and that his criminal history category was IV,

resulting in a sentencing guideline range of 135 to 168 months imprisonment.  <u>See</u> Position on

Sentencing/Sentencing Mem. [Docket No. 264].

On June 25, 2013, Hunter was sentenced to concurrent terms of life imprisonment for

Counts 1 and 21, conspiracy to distribute controlled substance and possession with intent to

distribute controlled substances; 240 months imprisonment for Counts 2, 13, 14, 16, 17, 18, 20,

and 22—controlled substances, firearms, and witness tampering offenses—to be served

concurrently to each other and Counts 1 and 21; 60 months imprisonment for Count 15, using and carrying a firearm during and in relation to a drug trafficking crime, to be served consecutively to Counts 1, 2, 13, 14, 16, 17, 18, 20, 21, and 22; and life imprisonment for Count 19, using and carrying a machine gun during and in relation to a drug trafficking crime, to be served consecutively to all counts.  <u>See</u> Sentencing J. [Docket No. 269].

Hunter timely appealed.  <u>See</u> Notice Appeal [Docket No. 273].  The issues raised on appeal were whether:  1) a dog sniff violated the Fourth Amendment; 2) prosecutorial misconduct during examination of government witnesses and closing arguments denied Hunter a fair trial; and 3) three life sentences violated Hunter's Sixth Amendment rights.  On October 28, 2014, the Eighth Circuit affirmed the sentence.  <u>See</u> Op. USCA [Docket No. 311]; <u>United States v. Hunter</u>, 770 F.3d 740 (8th Cir. 2014).  The Eighth Circuit noted that, while his appeal was pending, Hunter filed a motion for appointment of new counsel, complaining that Plunkett was not ordering transcripts and raising appealable issues.  <u>Hunter</u>, 770 F.3d at 746.  That motion, and a subsequent motion to reconsider, was denied.  <u>Id.</u>  After Plunkett filed the appeal brief, Hunter filed a Motion for Leave to File a Pro Se Supplemental Brief and a pleading entitled Supplementary Memorandum Proposed Findings of Fact and Conclusions of Law.  Those motions were also denied because "[i]t has long been Eighth Circuit policy 'that when a party is represented by counsel, we will not accept pro se briefs for filing.'"  <u>Id.</u> (quoting <u>United States v. Payton</u>, 918 F.2d 54, 56 n.2 (8th Cir. 1990) <u>cert. denied</u>, 502 U.S. 948 (1991)).  The Eighth Circuit noted that "Hunter has demonstrated a persistent unwillingness to accept the advice and assistance of appointed counsel—except when it suits him.  Now, he submits multi-page *pro se* filings on appeal, seeking to raise issues of ineffective assistance of trial and appellate counsel,

which we almost never take up on direct appeal. . . ." Id.

Hunter's current Motion asserts 27 grounds for setting aside his conviction and sentence. Hunter raises numerous objections to Plunkett's representation as well as Due Process, Sixth, and Fifth Amendment violations.

## III.  DISCUSSION

### A.  Section 2255 Standard

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  Relief is reserved for violations of constitutional rights and for a narrow range of injuries which were outside a direct appeal and which, if untreated, would result in a miscarriage of justice.  See Poor Thunder v. United States, 810 F.2d 817, 821-22 (8th Cir. 1987).

### B.  Ineffective Assistance of Counsel Claims

Hunter attacks his counsel's representation before, during, and after trial.  Hunter argues that Plunkett's representation was ineffective for myriad reasons, including failing to object to specific jury instructions, failing to communicate defense strategy, and failing to object to Hunter's earlier assault conviction as a crime of violence under the career offender provisions. The Government responds that none of Hunter's arguments has merit.

In Strickland v. Washington, the Supreme Court set forth the standard for claims of ineffective assistance of counsel.  466 U.S. 668 (1984).  To properly demonstrate a claim, a defendant must show that his attorney's representation fell below an objective standard of reasonableness.  Id. at 687-88.  The defendant must also demonstrate that a reasonable

probability exists that but for the attorney's errors, the result of the proceeding would have been different.  Id. at 694.  "[W]hen reviewing an ineffective-assistance-of-counsel claim, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (quotations omitted).

### 1. Prior to Trial

#### a. Challenges to the Indictment

Two of Hunter's claims relate to his counsel's failure to challenge the lawfulness of the Indictment.  Hunter argues that his counsel should have moved to dismiss the Indictment because of perjured grand jury testimony and for double jeopardy violations.

Any concerns over Plunkett's representation related to grand jury proceedings are obviated by the petit jury's guilty verdict at trial.  U.S. v. Dunn, 723 F.3d 919, 928 (8th Cir. 2013).  Hunter's double jeopardy argument is his pretrial detention constituted punishment and, thus, he was being punished for conduct before he was convicted of an offense.  However, "[p]retrial detention does not trigger the attachment of 'jeopardy' so as to invoke the protection of the Double Jeopardy Clause."  United States v. Head, No. 06-3873, 2007 WL 2026391, at *4 (D. Minn. July 9, 2007) (quoting United States v. Warneke, 199 F.3d 906, 908 (7th Cir. 1999)).

#### b. Severance

Hunter argues that Plunkett was ineffective for not seeking severance of the firearm charges.  Hunter contends that but for the firearm charges, the jury would not have heard testimony about his criminal history.

The trial record reflects that Hunter entered into an Old Chief stipulation.  Pursuant to the

stipulation, the jury's knowledge of Hunter's criminal history was limited to "previous to May 2, 2012, the defendant was convicted of a felony crime punishable by imprisonment for a term exceeding one year." Tr. at 328:2–4. An Old Chief stipulation is designed to both inform the jury about the sufficiency of an element in a § 922(g) charge—that the accused has been previously convicted of a crime punishable by imprisonment for a term exceeding one year—while blunting the risk of prejudice through the introduction of evidence that highlights the defendant's criminal history. Old Chief v. United States, 519 U.S. 172, 185–86 (1997). For this and other reasons, Plunkett was not ineffective for failing to argue that the firearm charge should be severed from the remaining charges.[4]

### c. Dog Sniff

Hunter argues that Plunkett failed to fulfill his responsibilities as counsel by not making arguments challenging the legality of the search of his apartment. The search argument, however, was unsuccessfully raised on appeal to the Eighth Circuit. See Hunter, 770 F.3d at 742–43. This forecloses any ineffective assistance of counsel argument because the second Strickland factor cannot be satisfied.

### 2. During Trial

Hunter raises many arguments challenging the adequacy of his representation during trial. Hunter's complaints include the failure to make proper testimonial and evidentiary objections, and the failure to contest certain jury instructions.

---

[4] Section 922(g) charges are commonly tried with narcotics offenses, suggesting that had a motion to sever been filed, it would likely have been denied. See e.g., United States v. McClain, 171 F.3d 1168, 1170 (8th Cir. 1999) (felon in possession charge tried with possession of methamphetamine charge); United States v. Boykin, 986 F.2d 270, 272 (8th Cir. 1993) (felon in possession charge tried with narcotics offenses).

### a.  Hearsay Evidence

Hunter argues that Plunkett was ineffective in failing to object when statements of a co-defendant were introduced at trial through other witnesses.

 Contrary to Hunter's argument, Plunkett did object to the introduction of co-conspirator statements as inadmissible hearsay.  See Tr. at 167:20–22.  Plunkett's objection, however, was overruled and the testimony was admitted.  Id. 167:24–168:4.

### b.  Preparation and Defenses

Hunter argues that Plunkett was not prepared to represent him during trial.  Relatedly, Hunter claims that Plunkett failed to investigate facts and to pursue defense ideas and strategy suggested by Hunter.

When Hunter fired his first attorney, he elected to proceed pro se with Plunkett as standby counsel.  Hunter claims that Plunkett, as standby counsel, stopped preparing for trial.  The record reflects otherwise—Plunkett testified that he frequently met and spoke with Hunter about his case and that he aided Hunter in drafting and filing a significant number of pretrial motions.  Additionally, when Hunter decided to represent himself, it was made clear that Hunter would be proceeding alone:

> Further, [Hunter] understands that, by representing himself, he is giving up his right to consult with counsel, to have counsel assist him in preparing a defense, to have the assistance of counsel at trial, and to have the assistance of counsel in all other matters pertaining to these proceedings.  The defendant appears to have full knowledge of the consequences of representing himself.

Order [Docket No. 95] at 1–2.  Any claim that Hunter's constitutional right to trial was violated when Plunkett was acting as standby counsel is undermined by Hunter's decision to represent himself.

On the morning of trial, Hunter reversed course and expressed his desire for Plunkett to represent him as lead counsel. After confirming Hunter's intention, the Court inquired of Plunkett's readiness and level of preparation:

> The Court: All right. Mr. Plunkett, I know that I have kept you in the case, at times when both you and Mr. Hunter wanted you to exit, but I take it you do feel prepared and ready to proceed today?
>
> Mr. Plunkett: I do, Your Honor.

Tr. at 5:13–17. Plunkett's preparedness was reflected throughout the four day trial. Hunter's claim that Plunkett lacked the factual or legal knowledge required to ensure Hunter received constitutionally suitable representation is meritless.

Finally, the Court asked Hunter whether he understood that Plunkett was allowed to use professional discretion and his own judgment in deciding how to question witnesses, pursue defenses, and more:

> The Court: An attorney is allowed, Mr. Hunter, an amount of discretion to use their judgment in how they propose questions, which witnesses they choose to call, which defenses they chose to pursue. . . . Do you understand that there are some areas that [Mr. Plunkett] has complete discretion in and other areas that are yours?
>
> The Defendant: Yes, ma'am.

Id. 7:4–15. Plunkett's decision not to pursue defenses suggested by Hunter does not constitute ineffective assistance of counsel because electing which defenses to pursue was within his professional province. See James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance of counsel").

### c. Objection to Controlled Substance Evidence

Hunter argues that Plunkett's representation was deficient for his failure to object to the introduction of certain controlled substances. Hunter's argument is that the evidence was

12

inadmissiable due to chain of custody concerns. However, in addition to assisting Hunter in filing pretrial motions contesting the handling of the controlled substances by the St. Paul Crime Laboratory, Plunkett cross-examined employees of the lab on the procedures for handling of evidence. See e.g., Tr. at 516:5–522:2. Hunter's argument that Plunkett failed to raise these concerns is belied by the record.

### d. Jury Instructions

Hunter lodges multiple challenges concerning the instructions that were submitted to the jury.

### i. Aiding and Abetting

Hunter argues that Plunkett's representation was constitutionally infirm for failing to object to jury instruction number 37, which defined aiding and abetting. Instruction number 37, however, tracks the model instruction for aiding and abetting in the Eighth Circuit. Hunter also argues that his conviction of aiding and abetting the use and carrying of a machine gun during and in relation to a drug trafficking crime cannot stand because the principal offender lacked knowledge that the firearm in question was a machine gun. The Eleventh Circuit has held that although the Government must prove beyond a reasonable doubt that the firearm in question was a machine gun, such knowledge is not required by the defendant. United States v. Haile, 685 F.3d 1211, 1218 (11th Cir. 2012). While other courts have disagreed with this conclusion, further analysis of this issue is not necessary here because the Government was not required to prove Hunter's co-defendant's knowledge of the firearm. Because Hunter was on trial for the offense, the knowledge of his co-defendant is irrelevant. Testimony elicited at trial went to Hunter's knowledge of the firearm in question, specifically that it was "a fully." Tr. at 332:20.

There was nothing ineffective about Plunkett's failure to object to the aiding and abetting jury instruction.[5]

### ii.  Pinkerton

Hunter also argues that Plunkett's failure to object to jury instruction number 20 resulted in constitutionally deficient representation because the instruction permitted jurors to infer guilt of the conspiracy charge from the aiding and abetting charges.  Hunter claims that because there was no evidence of an agreement between himself and Gilow or Harvey, the instruction influenced jurors to infer a conspiracy from the series of offenses committed by Gilow or Harvey.

Instruction number 20 addresses vicarious liability of co-conspirators under Pinkerton v. United States, 328 U.S. 640 (1946).  Pinkerton held that the overt act of one member of a conspiracy is attributable to all other members of the conspiracy.  Id. at 646.  The instruction read by the Court has been approved by the Eighth Circuit.  See United States v. Pierce, 479 F.3d 546, 549–51 (8th Cir. 2007).  Additionally, testimony at trial established the partnership between Hunter, Gilow, and Harvey to sell narcotics and weapons.  For example, on April 20, 2012, undercover officers met with Gilow and Harvey.  Harvey handed a phone with Hunter on the line to one of the officers.  After a brief conversation, Harvey and Gilow sold heroin to the officers.  The jury heard similar evidence related to other transactions.  The evidence introduced at trial permitted the Pinkerton instruction.  Accordingly, Plunkett did not render deficient

---

[5] Hunter also argues that his § 924(c) conviction needs to be set aside because he cannot be convicted of aiding and abetting the distribution of narcotics because the sales were made to undercover agents.  Hunter contends that because the undercover agents lacked criminal intent, Hunter can only be charged with aiding and abetting the attempted distribution, not actual distribution, of the drugs.  There is no support for this argument in the Eighth Circuit.

representation by failing to object to this instruction.

### iii.  Instruction Number 31

Hunter also challenges the use of jury instruction number 31, the instruction establishing

the elements of the crime of using and carrying a firearm during or in relation to a drug

trafficking crime.  According to Hunter, the instruction is erroneous because the second element

permitted the jurors to convict if the firearm was used or carried, rather than requiring a finding

that the firearm was used and carried.

The Eighth Circuit has squarely rejected this argument:

> Section 924(c)(1)(A) provides enhanced penalties for any person who, during and
> in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who,
> in furterarnce of any such crime, possesses a firearm.  When, as here, a statute is
> worded in the disjunctive . . ., federal pleading requires that an indictment charge
> in the conjunctive to inform the accused fully of the charges.  However, it is
> appropriate for the district court to instruct the jury in the disjunctive form used in
> the statute, because proof of any one of the violations charged conjunctively in
> the indictment will sustain a conviction.

United States v. Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005) (alterations in original, quotation

marks and citations omitted).

### iv.  Multiple § 924(c) Crimes

Hunter argues that the jury was allowed to premise his guilt on the § 924(c) offenses

through the existence of a conspiracy, rather than guilt of a predicate drug trafficking offense.[6]

---

[6] Hunter also makes an entrapment argument, claiming that the government agents were
the individuals who suggested and encouraged the firearm sales.  Although this argument does
not appear to be properly raised, even if it was, the argument falls flat.  A successful entrapment
defense requires a showing that the government induced the crime, and the government
inducement is "conduct that creates a substantial risk that an undisposed person or otherwise
law-abiding citizen would commit the offense."  United States v. Abumayyaleh, 530 F.3d 641,
646 (8th Cir. 2008) (citing United States v. Stanton, 873 F.2d 608, 610 (8th Cir. 1992)).  The
jury heard evidence that after Gilow sold the undercover agent heroin, Gilow asked the agent

However, the jury instructions for the two § 924(c) charges, instructions number 31 and 33,

explicitly required the jury to find Hunter guilty of a specific drug trafficking

offense—distribution of heroin as charged in Count 14 in instruction number 31, and distribution

of heroin as charged in Count 18 in instruction number 33.

Hunter also argues that the underlying heroin charges actually resulted in a single

violation of § 924(c), citing United States v. Vichitvongsa, 819 F.3d 260 (6th Cir. 2016).  In that

case, the defendant was charged with four violations of § 924(c) for his involvement in two

separate robberies.  Id. at 264.  In holding that the defendant could only be charged for two

violations of § 924(c), one for each robbery, the Sixth Circuit held that taking one affirmative

firearm act, brandishing a handgun, while simultaneously committing two predicate offenses,

conspiring to commit robbery and drug trafficking, was not sufficient to substantiate two §

924(c) convictions.  Id. at 267.  In Hunter's case, the two § 924(c) charges resulted from two

distinct firearm acts with two distinct predicate offenses that occurred on two different dates.

Vichitvongsa is inapposite.

### 3.  After Trial

Hunter also argues that his attorney failed to provide constitutionally adequate

representation in proceedings that occurred after all the evidence was submitted.

### a.  Rule 29 Motion

Hunter argues that Plunkett's Rule 29 Motion for Judgment of Acquittal was merely

perfunctory and lacked sufficient evidentiary and factual support.  While Plunkett's argument in

---

what else was he looking for.  Tr. at 141:19–23.  At this point, the officer made a gesture
suggesting guns.  Id.  The record does not support an entrapment defense.

support of Hunter's acquittal was brief, the Court disagrees that Plunkett's brevity resulted in

constitutionally deficient representation.  The trial record includes overwhelming evidence of

Hunter's guilt, which the Court had just heard.  Moreover, the specific arguments Hunter alleges

Plunkett should have raised are either undermined by the record or are made, unsuccessfully, in

the present motion.  Since Hunter cannot show prejudice, Plunkett's argument on the Rule 29

Motion does not afford Hunter relief.

### b.  Assault Conviction

The PSR identified Hunter as a career offender because he had two prior felony

convictions in Mississippi, one for a narcotics offense and the other for an assault on a law

enforcement officer.  PSR ¶ 64.  Hunter argues that Plunkett was ineffective in failing to

challenge the assault conviction as a predicate offense for sentencing enhancement purposes.

The statute in effect at the time Hunter was convicted of the assault read:

> (1) A person is guilty of simple assault if he (a) attempts to cause or purposely,
> knowingly or recklessly causes bodily injury to another; or (b) negligently causes
> bodily injury to another with a deadly weapon or other means likely to produce death
> or serious bodily harm; or (c) attempts by physical menace to put another in fear of
> imminent serious bodily harm. . . .

Miss. Code Ann. § 97-3-7(1) (1995).

As an initial matter, Plunkett did argue in his sentencing memorandum and at sentencing

that the assault conviction should not be used in determining Hunter's status as a career offender.

Position Sentencing/Sentencing Mem. [Docket No. 264] at 2; Tr. at 12:9–24.  Nonetheless, the

events surrounding the assault resulted in Hunter pleading guilty to two crimes, Felony

Intimidation of a Law Enforcement Officer and Simple Assault of a Law Enforcement Officer.

Hunter argues that the assault conviction cannot qualify as a violent offense.  The PSR states that

Hunter was charged with "wilfully, unlawfully, feloniously and purposefully . . . caus[ing] bodily injury to the [law enforcement officer] by willfully, unlawfully, feloniously and purposely striking and kicking the [law enforcement officer]."  PSR ¶ 78.  This makes Hunter's citation to United States v. Smith, 41 F. Supp. 3d 530 (N.D. Miss. 2014), inapposite because there is no uncertainty under which version of the crime in the statute Hunter was charged.

Hunter also argues that the assault conviction cannot be a predicate offense under Johnson v. United States, 135 S.Ct. 2551 (2015), the case that invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).  This argument is also unavailing, as the record of conviction reflects that the assault caused bodily harm through the act of striking and kicking.  Unlike the charge at issue in Wiggan v. United States, No. 15-447, 2016 WL 4179838, at *10–14 (D. Conn. Aug. 5, 2016), cited by Hunter, causing bodily harm by striking and kicking has as an element the use or attempted use of physical force, satisfying §4B1.2(a)(1).[7]  Hunter's assault conviction was properly determined to be a predicate felony for career offender purposes.

### c.  Jail Conditions

Hunter argues that Plunkett was ineffective for failing to argue for a base offense level reduction for the conditions he experienced in jail.  Even if a departure was warranted, Plunkett

---

[7] The conviction at issue in Wiggan was for assaulting a peace officer.  The Connecticut statute for that offense was worded in a manner that would have allowed a conviction where the only intentional conduct was the "intention to interfere with the performance of an officer's duties."  Wiggan, 2016 WL 4179838, at *10.  The statute at issue in Wiggan and the statute under which Hunter was convicted are sufficiently distinct to disclaim the holding in Wiggan from applying equally here.  See also United States v. Castleman, 134 S. Ct. 1405, 1414 (2014) ("Castleman pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child . . . and the knowing or intention causation of bodily injury necessarily involves the use of physical force.").

cannot be faulted for failing to seek the variance because a reduction would have had no effect on the sentence Hunter received.  The Court was without authority to impose a sentence below life imprisonment on Count 19.  Accordingly, Hunter was not prejudiced for Plunkett's failure to argue for a offense level reduction due to the conditions of his pretrial confinement.

### d.  Drug Quantities

Hunter argues that Plunkett should have objected at the sentencing hearing to the aggregating of drug quantities used to calculate his base offense level.  Like Hunter's argument about jail conditions, Plunkett cannot be faulted for not contesting his base offense level because any reduction in offense level would not have impacted the sentence ultimately imposed.

### e.  Direct Appeal

Hunter complains that Plunkett should have argued on direct appeal that he was the victim of sentence manipulation by law enforcement.  Specifically, Hunter argues that law enforcement officers first broached the subject of firearms and delayed arresting Hunter in order to add additional firearm offenses that could be used to impose a longer sentence.

"In the context of a downward departure, we have said that in order to succeed on a claim of sentencing manipulation, the defendant bears the burden to prove by a preponderance of the evidence that the officers engaged in [conduct] . . . solely to enhance [the defendant's] potential sentence." United States v. Sacus, 784 F.3d 1214, 1220 (8th Cir. 2015) (modifications in original and quotation marks omitted).  "Where sentencing manipulation occurs, the court 'should grant a downward departure to the Guidelines range it believes would apply absent the manipulation.'" United States v. Moran, 612 F.3d 684, 691 (8th Cir. 2010) (quoting United States v. Torres, 563 F.3d 731, 734 (8th Cir. 2009)).

As previously noted, the record does not support Hunter's version of being unduly influenced into selling firearms. To the contrary, neither Hunter nor his co-defendants balked when the undercover agents expressed an interest in purchasing firearms: Hunter and his co-defendants readily provided firearms to the undercover agents.

In any event, as discussed above, such an argument would have been fruitless because even if a downward departure was granted, Hunter's sentence would not have changed.

### f. Appellate Counsel

Hunter's final argument relating to Plunkett's representation concerns his appeal to the Eighth Circuit. Hunter contends that Plunkett's performance at oral argument fell below what is constitutionally acceptable representation. The Court disagrees. Hunter's identification of the claims Plunkett should have pursued more vigorously on appeal also form the basis of this Motion. Because the arguments Hunter advances here do not entitle him to relief, it cannot be said that he was prejudiced by his appellate counsel's failure to advance the same arguments on appeal.

## C. Substantive Claims

### 1. Grand Jury Proceeding and Hearsay Evidence at Trial

Hunter's first substantive claim concerns the grand jury proceeding. Hunter argues that the grand jury was incorrectly told that Gilow was going to be a Government witness at trial. Hunter claims that when the Government learned Gilow would not testify at trial, the case should have been resubmitted to the grand jury. As noted above, however, any errors in the grand jury proceeding are rendered either harmless or moot by a subsequent petit jury guilty verdict. Dunn, 723 F.3d at 928.

20

Hunter also argues that hearsay evidence of conspiratorial statements admitted at trial violated his constitutional confrontation rights.  The Government correctly responds that any such evidence was properly admitted under Federal Rule of Evidence 801(d)(2)(E), which permits the admission of a statement made by a co-conspirator or the defendant if the statement was made during and in furtherance of the conspiracy.  At trial, substantial evidence of a conspiracy between Hunter, Gilow, and Harvey was introduced.  The testimony was properly admitted.

### 2. Evidence to Convict on Count Two

Hunter argues that there was insufficient evidence admitted at trial to support his conviction of Count 2, aiding and abetting the distribution of 5-MeO-DIPT.[8]  "Generally, an alleged insufficiency of the evidence is not a ground for relief under § 2255."  United States v. Johnson, 582 F.2d 1186, 1188 (8th Cir. 1978).  In any event, the evidence supporting Hunter's conviction was overwhelming.  Hunter complains that a video recording shown at trial was dark and that it would have been impossible to identify him as the person depicted in the video.  The events in the video, however, were testified to by the undercover agent who set up the controlled buy.  The officer testified to what was displayed in the video, explaining that he was able to later confirm that Hunter was the individual in the video based on comparing the mannerisms, interactions, and speech exhibited by the subject in the video to those of Hunter.  See Tr. at 67:4–11.  While it is possible that the jury was unable to identify Hunter from the video alone, that is not dispositive because the officer testified that he was able to identify from his direct

---

[8] Although the controlled substance charged in Count 2 differs in name from the controlled substance purchased by the confidential informant, at trial, a witness for the Government who analyzed the "ecstacy" tablets testified that the tablets contained 5-MeO-DIPT. Tr. at 531:21–532:8.

observations that the individual in the video was Hunter.

### 3. Right of Self-Representation

Hunter argues that his pretrial conditions denied him the right of self-representation. Hunter specifically alleges that he was denied access to the telephone, legal research materials, and was placed in solitary confinement for the sole purpose of hampering his ability to prepare for trial.

Hunter raised these concerns prior to trial.  See Mot. Request Access Legal Materials [Docket No. 97]; Mot. Release Admin. Segregation [Docket No. 100].  Importantly, Hunter's motion requesting access to legal materials was granted.  See Order [Docket No. 161].  Hunter's request to be removed from administrative segregation was denied because it was determined that segregation was warranted to prevent witness tampering.[9]  Id.  Nothing raised on these issues in the current Motion entitles Hunter to relief.

### 4. Right to Counsel

Hunter argues that his Sixth Amendment right to counsel was denied because trial counsel was not appointed until the morning before trial.  While true, Hunter was solely responsible for his standby counsel not becoming trial counsel until that stage of the proceedings.  As noted above, on November 20, 2012, Hunter elected to proceed pro se with the assistance of standby counsel.  Before trial, Hunter, with the assistance of Plunkett as standby counsel, filed multiple motions attacking the Indictment and the admissibility of evidence.  The morning before trial was scheduled to begin, Hunter informed the Court that he no longer wanted to represent himself and requested that Plunkett be appointed his attorney.  Hunter cannot claim

---

[9] Notably, Hunter was charged and ultimately convicted of witness tampering.

22

to be deprived of his right to trial when he affirmatively elected to represent himself until the morning of trial.

### 5.  Evidence of Guilt as to Count 22

Hunter argues that his conviction for witness tampering must be vacated.  Hunter contends that the Government failed to introduce evidence that showed Gilow was threatened by a letter Hunter sent to her.[10]  But the Eighth Circuit Model Jury Instructions explicitly states that it is not necessary for the government to prove that the witness was actually frightened.  Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.1512 (2014).  Moreover, conviction under 18 U.S.C. § 1512(b)(1) may also be reached if the defendant "corruptly persuades," which the Eighth Circuit held includes "'attempting to persuade someone to provide false information to federal investigators.'"  United States v. Pennington, 168 F.3d 1060, 1066 (8th Cir. 1999) (quoting United States v. Farrell, 126 F,3d 484, 488 (3d Cir. 1997) (emphases in original)).  The letter is unequivocal; Hunter attempted to persuade Gilow to give false information to investigators.  None of the cases cited by Hunter provide any merit to his argument.

### 6.  Sentencing Manipulation

Hunter argues that his Due Process rights were violated because the Government manipulated his sentence by encouraging the firearms transactions.  For the reasons discussed in part III.B.3.e., above, this argument does not provide Hunter any relief.

---

[10] Surprisingly, Hunter claims in his Motion that the Government failed to adduce evidence that showed Hunter was the author of the letter Gilow received.  Hunter, however, stipulated that he both wrote and sent the letter to Gilow.  Tr. at 347:17–24.

**7.  Concurrent 20-Year Sentences for Counts 16 and 20**

Hunter argues that he received an unlawful sentence for his convictions on Counts 16 and 20, charging him with violating 18 U.S.C. § 922(g).  Hunter and the Government agree that the statutory maximum sentence for each of Counts 16 and 20 was ten years and that Hunter received a sentence of 20 years.  However, because Hunter was correctly sentenced on the other counts to concurrent sentences exceeding the ten-year maximum, under the concurrent-sentence doctrine, Hunter's sentences for Counts 16 and 20 do not need to be vacated.  See United States v. Edwards, 568 F.2d 68, 72 (8th Cir. 1977) ("The concurrent sentence doctrine permits a reviewing court to pass upon the validity of less than all counts upon review of convictions on plural counts of an indictment, if a ruling in appellant's favor would not reduce the penalty imposed with respect to the valid conviction."  (quotation marks omitted)).

**8.  Evidence of Hunter's Use or Carrying a Firearm in Relation to a Drug Offense**

Hunter argues that the evidence presented at trial did not show that Hunter "used" the firearms that led to his firearm related convictions, citing Watson v. United States, 552 U.S. 74 (2007) in support.  The holding in Watson, however, expressly forecloses Hunter's argument because the jury heard evidence that Hunter sold guns and drugs to the undercover agents.  Watson held that "use" was to be afforded its plain conversational meaning, such that, for example, a man who trades a hat for gloves is sensibly said to use the hat, but it would not be proper to say the man used the gloves.  Id. at 79.  In this case, Hunter is the man, the hat is the firearm, and the gloves are cash.  Under Watson, Hunter "used" the firearm as understood in the statute.

Hunter's argument that merely because the transfer of firearms occurred at the same

place and immediately subsequent to a completed drug transaction does not satisfy the use requirement is also unavailing. 18 U.S.C. § 924(c)(1)(A) makes it illegal for anyone who, "during and in relation to any . . . drug trafficking crime . . ., uses or carries a firearm." "A defendant carries a firearm 'during and in relation to' an underlying drug-trafficking offense when the firearm 'facilitated or had the potential to facilitate' the drug-trafficking offense." United States v. Ellis, 817 F.3d 570, 578 (8th Cir. 2016) (quoting United States v. Winn, 628 F.3d 432, 439 (8th Cir. 2010)). In United States v. Claude X, 648 F.3d 599, 604 (8th Cir. 2011), the defendant was convicted under § 924(c)(1)(A) for selling a firearm and heroin in a single transaction, holding that the meaning of "use" contemplated by the Supreme Court "clearly encompasses selling a firearm and drugs in the same container, in a single transaction." Other circuits agree that the contemporaneous sale of drugs and a firearm in exchange for money constitutes carrying a firearm during and in relation to a drug trafficking crime. See United States v. Rivera, 504 F. App'x 554 (6th Cir. 2012); United States v. Timmons, 283 F.3d 1246 (11th Cir. 2002); United States v. Lipford, 203 F.3d 259 (4th Cir. 2000).

That is the fact pattern here. At trial, an agent testified that on May 2, 2012, he purchased a firearm and heroin in a single transaction, paying $7,800 for the items. Tr. at 311:1–25. On May 22, 2012, an agent purchased a different firearm and more heroin as part of a single transaction. Id. at 213:11–215:12. The record supports the jury's convictions under § 924(c)(1)(A).

### 9. Prosecutor's Comments

Hunter complains about the prosecutor's closing argument, arguing that certain statements were improper and violated his Fifth Amendment rights. This argument was

25

previously raised and rejected by the Eighth Circuit on direct appeal.  See Hunter, 770 F.3d at 745.  Consequently, it cannot be reasserted here.  United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Hunter's Petition would be debatable among reasonable jurists.  Thus, the Court declines to grant a certificate of appealability.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Eric Michelle Hunter Motion to Vacate under 28 U.S.C. § 2255 [Criminal Docket No. 348] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 22, 2016.

26