UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

        **MEMORANDUM OPINION**
        **AND ORDER**
        Criminal No. 12-185(3) ADM/FLN

Eric Michelle Hunter,

        Defendant.

___

Thomas M. Hollenhorst, Assistant United States Attorney, Minneapolis, MN on behalf of Plaintiff.

Andrew H. Mohring, Assistant Federal Defender, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Eric Michelle Hunter's ("Hunter") Motions to Modify Sentence [Docket Nos. 410, 417]. Hunter seeks a compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A). Plaintiff United States of America (the "Government") opposes the Motion. See Gov't Resp. Opp'n [Docket No. 421]. Hunter has also filed a Motion for Evidentiary Hearing [Docket No. 423]. For the reasons set forth below, the Motions are denied.

## II. BACKGROUND

This Court's history with Hunter is a long one. On July 21, 1999, Hunter was sentenced to a term of 188 months on a crack cocaine trafficking offense. See United States v. Hunter, Crim. No. 99-08 ADM/RLE (D. Minn.) ("1999 Case"), Min. Entry [1999 Case Docket No. 30]. On May 27, 2008, he was re-sentenced to 151 months as the result of a retroactive change in the Sentencing Guidelines for crack cocaine offenses. See Order [1999 Case Docket No. 54]. On

March 1, 2010, Hunter was released from custody and began a term of supervised release. See Violation Report [1999 Case Docket No. 61] at 3. Within just months of his release from custody, Hunter began violating the conditions of his supervised release. Id. at 1–2. His supervised release violations began in less serious ways, but within 18 months of his release he had committed the first of a series of new very serious federal felony offenses that resulted in the convictions in this case. Id.

The felony offenses were committed from September 2011 through July 2012. During this time, Hunter sold heroin, cocaine base, cocaine, and designer drugs as he directed the activities of co-conspirators Rikki Lee Gilow and Jerry Anthony Harvey. Presentence Investigation Report ("PSR") ¶¶ 12–23, 27. Hunter also sold two firearms, including a machine gun, to an undercover officer in connection with two of these drug transactions. Id. ¶ 18. Afer Hunter's arrest on July 24, 2012, he compounded his bad conduct by sending a letter to Gilow asking her to falsely testify that she had no knowledge of Hunter being involved in the sales of controlled substances. Id. ¶¶ 21, 22.

Hunter's new charges were tried to a jury. On February 22, 2013, the jury found him guilty of one count of conspiracy to distribute controlled substances, five counts of aiding and abetting the distribution of controlled substances, two counts of being a felon in possession of a firearm, one count of aiding and abetting the use and carrying of a firearm during and in relation to a drug trafficking crime, one count of aiding and abetting the use and carrying a machine gun during and in relation to a drug trafficking crime, one count of possession with intent to distribute controlled substances, and one count of witness tampering. See Verdict [Docket No. 205].

Hunter was sentenced on June 25, 2013.  Min. Entry [Docket No. 267]; Sentencing J. [Docket No. 269].  At the sentencing hearing, the Court determined Hunter was a career criminal based on a state felony conviction in Mississippi for simple assault of a law enforcement officer in 1996, and the 1999 felony drug conviction in this court.  Sentencing Tr. [Docket No. 281] at 23; PSR ¶¶ 64, 78, 79.  The Court sentenced Hunter to concurrent life terms for the drug conspiracy and possession with intent to distribute offenses; 240 month concurrent terms for the aiding and abetting distribution of controlled substances, felon in possession of a firearm, and witness tampering offenses; a consecutive 60 month term for the use and carrying of a firearm during and in relation to a drug trafficking crime; and a mandatory life term for aiding and abetting the use and carrying of a machine gun during and in relation to a drug trafficking crime, to be served consecutively.  Sentencing J. at 3.

When imposing the mandatory life sentence, this Court stated:  "It seems to me very sad that you are in this situation and I just really don't feel I have any intellectually honest options to impose a sentence other than life."  Sentencing Tr. at 23.  The Court further stated that "my hands are largely tied" and that there was "no way around" the mandatory minimum life sentence due to Hunter's past criminal record.  Id. at 22–23.  However, this Court also noted, that "[y]ou would be facing very long penalties even if I didn't find that you were required to have a life sentence as a result of the career offender [status] for the machine gun.  Your problems are multiple here and very serious."  Id. at 22.  Hunter appealed his conviction and sentence and the Eighth Circuit affirmed.  See United States v. Hunter, 770 F.3d 740 (8th Cir. 2014).

Hunter is currently incarcerated at the United States Penitentiary in Terre Haute, Indiana

("USP Terre Haute") and has served approximately 98 months of his sentence. Hunter has submitted in support of the current motion a very impressive set of materials which strongly support his argument that he has at last made a significant change in the trajectory of his life to date. While in prison for his latest convictions, Hunter's behavior has been exemplary. He has incurred no disciplinary actions and has participated in numerous educational courses offered by the BOP, including the intensive 18-month Life Connections Program. See Compass. Release Investig. [Docket No. 414] at 3; App'x [Docket No. 420] at 8–40, 235–36. He has also served as a Chapel Clerk for the past four years and began a housekeeping apprenticeship in February 2020. App'x at 37, 42, 197, 208.

Perhaps most significantly, Hunter was selected by prison staff to work as a member of the Terre Haute Penitentiary Suicide Prevention Team. The selection process included being "screened by several departments within the institution" and being chosen "based upon [his] demonstration of maturity, responsibility and commitment to the well-being of his fellow inmates." Id. at 6, 7, 43. Hunter has assumed a leadership role on the Suicide Prevention Team by working as a shift coordinator, assisting with training, and mentoring new team members. Id. at 43. This accomplishment by Hunter is commendable and presents to this Court a previously unseen aspect of Hunter.

Hunter now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Hunter, age 49, states he suffers from Type 2 diabetes, hypertension, and hyperlipidemia, which subject him to an increased risk of severe illness or death should he contract the COVID-19 virus. He also takes a nasal cotosteroid which he contends renders him immunocompromised and makes him more vulnerable to COVID-19. Hunter further argues the living conditions at

USP Terre Haute prevent him from mitigating the risk of contracting COVID-19 because the dorm-style facility makes social distancing impossible. USP Terre Haute reports that there currently are 6 active prisoner cases of COVID-19 at the facility. Two prisoners have died from the virus and 82 have recovered. See https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020). Hunter contends these circumstances constitute extraordinary and compelling reasons for his release. He also argues that his rehabilitative efforts establish that he is not a danger to the public and that the sentencing factors support his release.

The Government opposes the Motion, arguing a sentence reduction is not warranted because Hunter's conditions are well controlled, he poses a danger to the community, and the § 3553(a) sentencing factors weigh against his release.

### III. DISCUSSION

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G.

5

§ 1B1.13 comment n.1(A)(ii). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of th[e] policy statement." U.S.S.G. § 1B1.13 comment n.3. The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A). U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government agrees that Hunter has exhausted his administrative remedies with the BOP because he submitted a request for compassionate release that was denied by the warden of his facility on May 28, 2020. See Gov't Mem. Opp'n at 8 n.2 (citing Docket No. 410, Attach. 1). Accordingly, Hunter's motion for compassionate release is ripe for consideration.

Hunter's Type 2 diabetes is a condition that has been recognized by the Centers for Disease Control and Prevention ("CDC") as elevating the risk for severe illness and complications from COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Oct. 7, 2020). Hunter also has hypertension and takes corticosteroids. The CDC has recognized that these conditions might increase the risk of severe illness from COVID-19. See id.

The Government concedes that Hunter's increased risk of severe illness from COVID-19

by reason of his Type 2 diabetes meets the standard for "extraordinary and compelling reasons." Gov't Mem. Opp'n at 10–11.  Nevertheless, the Government argues Hunter is at no greater risk of contracting COVID-19 than if he were released.

The prison where Hunter is housed recently experienced a significant COVID-19 outbreak.  Although the cases have subsided for now, future outbreaks cannot be ruled out, and the prison's dormitory environment prevents Hunter from social distancing to avoid contracting the virus.  Hunter's heightened risk of COVID-19 complications due to his serious and chronic medical conditions, combined with his inability to provide self care through social distancing and other measures, put Hunter's health in serious jeopardy until a COVID-19 vaccine becomes available.

Although Hunter faces temporary risks to his health posed by the COVID-19 pandemic, there is no viable release plan that would ensure the safety of Hunter and the public were he to be released.  Hunter's proposed release residence of his mother's home in Natchez, Mississippi was denied by the Southern District of Mississippi based on Hunter's current federal sentence, his extensive criminal history, his history of probation violations, and that he has not resided in Mississippi for over 32 years.  Compass. Release Investig. at 2.  Additionally, requiring Hunter to reside at a residential reentry center ("RRC") is not a viable option because an RRC is a congregate living setting.  As such, the risk to Hunter's health due to the inability to provide self care through social distancing would also be present in an RRC.

Even if the logistical barriers to finding a safe place for Hunter to transition to a safe and acceptable living situation could be met, Hunter's motion for compassionate release must be denied because it is not consistent with the § 3553(a) sentencing factors.  See, e.g., United States

v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020) (holding district court's denial of compassionate release was not abuse of discretion where prisoner's terminal cancer constituted extraordinary and compelling reasons for a sentence reduction but release would not be consistent with sentencing factors); United States v. Sears, No. 19-CR-21, 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (holding that "despite the fact that COVID-19 and [defendant's] medical condition are extraordinary and compelling reasons to grant his motion for compassionate release, section 3553(a)'s purposes of punishment require maintenance of the original prison term") (internal quotations omitted).

The sentencing factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The nature and circumstances of Hunter's offenses were described at the sentencing hearing as being "multiple . . . and very serious." Sentencing Tr. at 22. Not only did Hunter commit numerous drug crimes involving several types of drugs including heroin, he sold firearms—including a machine gun—in connection with two of the drug transactions. To further aggravate the seriousness of his offenses, he tampered with a witness. And, Hunter committed all of these crimes while still on supervised release for a previous federal drug conviction. Given these circumstances, the Court is not convinced that releasing Hunter now after serving 98 months would be sufficient to reflect the seriousness of the offenses, promote respect for the law, or deter Hunter (who is still relatively young) from future criminal conduct.

If Hunter were sentenced today, he would be facing a mandatory minimum sentence of

40 years:  five years for conspiracy to distribute controlled substances; five consecutive years for using and carrying a firearm during and in relation to a drug trafficking crime; and 30 consecutive years for using and carrying a machine gun during and in relation to a drug crime. See Gov't Mem. Opp'n at 13 n.8 (citing 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii) (2020); 21 U.S.C. § 841(b)(1)(B) (2020)).  Were he to be released now, Hunter would have served less than one fourth of this amount.  Under these circumstances, a sentence of less than 10 years is not appropriate and would not provide just punishment for Hunter's crimes.

The Court reaches this decision with regret.  During the past several years Hunter has made tremendous strides toward rehabilitation that the Court would like to reward.  His positive growth and leadership have been recognized by BOP staff and fellow inmates.  Hunter's efforts are impressive, particularly given that he is facing a life sentence and these accomplishments were made before a new path to possible release was envisioned.  The change in Hunter's behavior in prison does not appear to have been motivated at the time by any expectation of a sentence reduction.

Hunter is not the same person he was when sentenced in 2013.  But the changes he has made in the last few years while in custody are outweighed by the years of his life when he was at liberty and committed many crimes and has been a danger to the public.  The seriousness and quantity of his past offenses do not give the Court sufficient confidence that the new Hunter will remain law abiding upon release from custody at this time.

Although the Court has given significant consideration to Hunter's rehabilitation, a compassionate release sentence reduction is not consistent with the § 3553(a) sentencing factors.

Hunter has requested an evidentiary hearing on his compassionate release motion.  Based

on the evidence already provided by the parties, including a DVD Hunter submitted to the Court with statements by William Jackson, Chawanda Walker, and Brian Berg, an evidentiary hearing is not necessary.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Eric Michelle Hunter's Motions to Modify Sentence [Docket Nos. 410, 417] are **DENIED**, and Hunter's Motion for Evidentiary Hearing [Docket No. 423] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  October 7, 2020